1999 ME 101

Elizabeth **COURTNEY**

v.

Linda **BASSANO et al.**

Supreme Judicial Court of Maine.

Argued May 5, 1999.
Decided June 30, 1999.

Joseph W. Baiungo, (orally), Carver, Kimball & Baiungo, Belfast, for plaintiff.

William S. Kelly, (orally), Belfast, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Defendants Linda Bassano and Vito Peri appeal from the judgment entered in the Superior Court (Waldo County, *Atwood, J.*) in favor of plaintiff Eliza-

beth Courtney, holding that Bassano and Peri breached express warranties and violated the Unfair Trade Practices Act. On appeal, defendants contend that the court erred in finding that they breached an express warranty that plaintiff could return an antique table she purchased from defendants if she were unsatisfied as well as an express warranty that the table was "all original." Defendants also challenge the court's holdings that they violated the Unfair Trade Practices Act and, with respect to their counterclaim, that plaintiff did not defame them. Finding no error, we affirm the judgment.

[¶ 2] At trial, plaintiff testified that she saw an antique table advertised in the March 1996 issue of *Maine Antiques Digest*. The table was advertised by Blue Dolphin Antiques in Northport, an unincorporated business owned by defendants Linda Bassano and Vito Peri. The final line in the ad read "We Guarantee Complete Satisfaction." Plaintiff stated that she interpreted the guarantee to mean that if she were the least bit dissatisfied, she could return the table. When plaintiff phoned Blue Dolphin Antiques, Bassano told her that she and Peri had owned the table for several years and had restored the table's original red paint and replaced a knob. Bassano told plaintiff that the table had been constructed between 1770 and 1790 and that the asking price was $8250. After discussing the purchase with her husband and her decorator and viewing photographs of the table, plaintiff agreed to buy the table.

[¶ 3] Plaintiff testified that she paid the purchase price in installments and had paid in full within a few weeks. By agreement with defendants, her husband did not pick up the table until late July due to renovations that were being completed at her home. When she first saw the table, she was extremely disappointed in the table's appearance. After seeking other opinions and having the table appraised, plaintiff decided that she was not completely satisfied with the table because she felt that a piece of wood had been replaced, cleats had possibly been replaced, and black paint and circular saw marks could be observed in the drawer.

[¶ 4] Plaintiff testified that she phoned Blue Dolphin Antiques on August 14 and told Bassano that she was not satisfied with the table and wished to return it, offering to accept a refund of only $8000 in order to compensate Blue Dolphin for any inconvenience. Bassano responded: "You get what you paid for it, bring it." Nevertheless, when plaintiff's husband returned the table the following day, Bassano refused to return the purchase price and instead gave him a receipt stating that she would have the table appraised and if the table were not what it was represented to be, the purchase price would be returned. In September, plaintiff received a letter from Bassano stating that Blue Dolphin Antiques would not return her money because the two appraisals showed that the table was authentic and the guarantee promised only that.

[¶ 5] Plaintiff also testified that she eventually phoned *Maine Antiques Digest* to inquire about Blue Dolphin Antiques and to complain that she felt the advertisement had been "misrepresentative." Plaintiff sent the advertising manager at *Maine Antiques Digest* written documentation of her experience with Blue Dolphin Antiques and in a letter she suggested that defendant Peri had been verbally abusive to her husband when he returned the table.

[¶ 6] Defendant Vito Peri testified that he ran Blue Dolphin Antiques with his wife, Linda Bassano. They purchased the table in approximately 1980 for $3200 when it was removed from a farmhouse, and they replaced a knob on the table at that time. He admitted to speaking about the authenticity and vintage of the table with plaintiff, telling her that the table was "all original" with no major replacements and only minor imperfections.

[¶ 7] Defendant Linda Bassano testified that when plaintiff phoned her to explain she would be returning the table due to her dissatisfaction, plaintiff hung up before she could respond. Bassano testified that the language in the ad was intended to guarantee only that the item was authentic. She contended that she had never heard a complaint from plaintiff about the table other than a lack of authenticity. She stated that she sent a letter to plaintiff in September attaching the appraisals, and she expected that plaintiff would retrieve the table. Plaintiff did not retrieve the table, and Bassano did not refund plaintiff's money.

[¶ 8] Antiques dealer James Julia testified that at defendants' request he assessed the table's vintage and determined it to be a late eighteenth or early nineteenth century New England table. He explained that the table drawer contained a piece of replacement wood that would not affect the value of the table.

[¶ 9] The court found that defendants had expressly guaranteed both that plaintiff could return the table if she were unsatisfied and that the table was "all original." The court found that defendants breached the warranties and held that they violated the Unfair Trade Practices Act. The court also found for plaintiff on defendants' counterclaim that she had defamed them in remarks made to the advertising manager of the *Maine Antiques Digest.* Defendants appeal.

[¶ 10] Defendants first argue that the court erred in holding that they had created and breached an express warranty. Whether language creates an express warranty and whether a warranty has been breached are questions of fact. *See Maine Farmers Exch. v. McGillicuddy,* 1997 ME 153, ¶ 7, 697 A.2d 1266, 1268. Findings of fact, whether express or implied, are reviewed only for clear error. *See Gay v. Gay's Super Markets, Inc.,* 343 A.2d 577, 579 (Me.1975). A factual finding is clearly erroneous only if there is no competent evidence in the record to support it. *See VanVoorhees v. Dodge,* 679 A.2d 1077, 1080 (Me.1996).

[¶ 11] The Uniform Commercial Code describes the creation of an express warranty in part as follows: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 11 M.R.S.A. § 2–313 (1995). Moreover, "[t]he circumstances surrounding the agreement, including the knowledge of both parties, should be considered in determining whether an express warranty was formed." *Miller v. Lentine,* 495 A.2d 1229, 1231 (Me.1985).

[¶ 12] In the present case, the court's finding that defendants created an express warranty of plaintiff's satisfaction was supported by competent evidence, including the advertisement itself, and plaintiff's testimony that Bassano promised a full refund. The court's finding that defendants breached the warranty of complete satisfaction is supported by plaintiff's testimony that she was dissatisfied with the table and attempted to return it and was refused a refund. The court's finding that defendants expressly warranted that the table was "all original" was also supported by competent evidence, such as Peri's testimony that he told plaintiff that the table was "all original, [there are] no replaced legs, the top is original ... I said there's minor imperfections, but there is no major change on this table." Finally, the court's finding that defendants breached the warranty that the table was "all original" was supported by the testimony that a piece of wood in the drawer had been replaced.

[¶ 13] Finally, defendants contend that the court erred in holding that they violated the Unfair Trade Practices Act (UTPA). The UTPA states that:

Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or

household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper.

5 M.R.S.A. § 213(1) (Pamph.1998). In turn, section 207 of the UTPA states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." 5 M.R.S.A. § 207 (1989); *see also Guiggey v. Bombardier,* 615 A.2d 1169, 1172 (Me.1992) (noting that the UTPA is not triggered unless defendant's conduct is "unfair" or "deceptive").

[¶ 14] Defendants contend that plaintiff was required to show that they acted in bad faith. On the contrary, merely because a seller makes misrepresentations in good faith does not excuse him or her from liability. *See Bartner v. Carter,* 405 A.2d 194, 200 (Me.1979) (holding that, when real estate brokers advertised a lot as bigger than it actually was, they could not "avoid liability merely because they made the misrepresentation in good faith and without purpose to deceive"). We have frequently reiterated that private plaintiffs need not prove bad faith. *See, e.g., Binette v. Dyer Library Ass'n,* 688 A.2d 898, 906 (Me.1996) (holding in private plaintiff case that "[g]ood faith does not shield the withholder of material information from liability pursuant to the UTPA"). In this case, the court did not err in holding that defendants violated the UTPA by breaching the warranties, withholding information, and subjecting plaintiff to a pecuniary loss by refusing to refund her money after she returned the table.

[¶ 15] Finally, defendants allege that the court erred in holding that plaintiff did not defame them when she communicated with the advertising manager at *Maine Antiques Digest.* Defendants contend that because the court held that statements made by plaintiff were false and defamatory, the court was required to enter a judgment against plaintiff on their counterclaim.

[¶ 16] In order to prevail on their defamation claim, defendants had the burden of proving not only that plaintiffs' statements were false and defamatory, but also that she was at least negligent in publishing the statements. *See Withers v. Hackett,* 1998 ME 164, ¶ 9, 714 A.2d 798, 801; *see also Levinsky's, Inc. v. Wal–Mart Stores, Inc.,* 127 F.3d 122, 128 (1st Cir. 1997) ("Simply put, Maine defamation law does not recognize liability without fault; rather, as a predicate to recovery, Maine requires a defamation plaintiff to show that the defendant acted at least negligently."). The court found that plaintiff was not negligent in failing to ascertain the truth or falsity of her statement because she had a reasonable basis for her statements. *See Horton & McGehee, Maine Civil Remedies* § 20.a–6 at 20–9 (1991). Although the evidence in this case could support a finding of negligence, it does not compel such a finding. The factfinder could remain unpersuaded and no error was committed in granting judgment to plaintiff on defendants' counterclaim.

[¶ 17] As the court noted, plaintiff is entitled to attorney fees under the UTPA. *See* 5 M.R.S.A. § 213(2) (1989). Because the court has not yet determined the amount of plaintiff's attorney fees, we affirm the judgment but remand for the entry of an award of attorney fees.

The entry is:

Judgment affirmed. Remanded to the Superior Court for the entry of an award of attorney fees to plaintiff.