Mountz v Global Vision Prods. (2003 NY Slip Op 23905)

Mountz v Global Vision Prods.

2003 NY Slip Op 23905 [3 Misc 3d 171]

December 17, 2003

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, June 22, 2004

[*1]
Ross Mountz et al., on Behalf of Themselves and Others Similarly Situated, Plaintiffs,
v
Global Vision Products, Inc., et al., Defendants.
Supreme Court, New York County, December 17, 2003

APPEARANCES OF COUNSEL

Angiuli, Katkin & Gentile, Staten Island (Madelyn Jaye and Charles Internicola of counsel), for Global Vision Products and another, defendants. Weinstein, Kaplan & Cohen, P.C., Garden City (Lisa S. Schneider of counsel), for David L. Gordon, defendant. Scott A. Bursor, New York City, and Faruqi & Faruqi, LLP, New York City (Anthony Vozzolo of counsel), for plaintiffs.

{**3 Misc 3d at 172} OPINION OF THE COURT

Diane A. Lebedeff, J.
The plaintiffs are purchasers of Avacor, a hair loss treatment extensively advertised on television, in print and on the Internet. Their pleading, in essence, portrays the marketing techniques for Avacor as the modern day equivalent of the sales pitch of a snake oil salesman, against which plaintiffs primarily seek to invoke Maine consumer protection statutes urged to be applicable because the seller receives orders for Avacor in, and ships its product from, the State of Maine. Although the complaint {**3 Misc 3d at 173}contains class action allegations, no motion yet has been made to certify a class.
Defendant Global Vision Products, Inc. (GVP), which markets Avacor, is a New York corporation with offices in New York. Defendant Anthony Imbriolo is GVP's president and founder. These two defendants move for dismissal of the complaint, and its class action allegations, upon the assertion that the complaint fails to state a cause of action (CPLR 3211 [a] [7]), request summary judgment because they offer a money back guarantee (CPLR 3212), and seek an injunction restraining plaintiffs from litigating the same issues in other jurisdictions.
Defendant Gordon, who is further described below, also requests dismissal of the claims against him, albeit not by the submission of a formal cross motion for relief. Given that he made an earlier motion to dismiss the original pleading, which was denied with leave to renew in relation to the amended pleading, the court deems him also a moving party. It is noted that the court previously dismissed the claims raised against Derrike Cope, a race car driver endorsing Avacor as a part of the product's sales campaign, on jurisdictional grounds and the caption is amended to reflect such dismissal.

Background

Avacor is a trio of itemstogether represented to be "all-natural," "herbal," "clinically proven," and "revolutionary"which includes a shampoo, "herbal based topical formulation," and nutritional supplement. It is beyond dispute that Avacor's topical solution actually contains minoxidil, the main active ingredient in Rogaine.
Plaintiffs assert the defendants' claim of "no known side effects" of Avacor is refuted by documented minoxidil side effects, which include cardiac changes, visual disturbances, vomiting, facial swelling and exacerbation of hair loss, among others. Plaintiffs urge Avacor is a drug within the meaning of 21 USC § 321 (g) (1) (B) and (p) (1), requiring United States Food and Drug Administration (FDA) approval prior to distribution in interstate commerce under 21 USC § 355 (a). Further, given the nutritional and dietary supplement claims made on behalf of Avacor's nutritional pills, plaintiffs plead such pills fail to meet the substantive and disclaimer labeling standards of 21 USC § 343 (r) (3), a subdivision of the Dietary Supplement Health Education Act.
The plaintiffs assert that the disclosure on the label that Avacor contains "2, 4-diamino-6-piperidino-pyramidine-3-oxide,"{**3 Misc 3d at 174} the chemical representation of minoxidil, is not a meaningful substitute for proper disclosure. On or about February 10, 2003, after plaintiffs filed this suit and after the composition of Avacor and the lack of the requisite product warnings came to the attention of the FDA, GVP announced that it would change the labeling to provide proper disclosure, give relevant warnings, and discontinue the claim the product was "all natural" and had a success rate of more than 90%. The court has not been advised whether such changes have been implemented.
The amended complaint references these facts and further alleges that the promotion of Avacor includes fallacious references that Avacor was "extensively tested" and used at the Hair & Skin Treatment Center and the New York Hair Clinic. Both are pleaded to have offices physically contiguous with GVP's office, to have never offered services utilizing Avacor, and to have never provided treatment to clients. The complaint contends the reprinted "medical study" shipped with Avacor also falsely reports (1) research conducted at these inoperative facilities and (2) a "90% success rate" without support from a sound clinical study.
The complaint charges GVP's president, defendant Imbriolo, is a coauthor of this study and is not identified by his corporate relationship and interest in the product.
Further, it is alleged that defendant Gordonportrayed in advertising as a doctor, identified as "Medical Director" of one of the clinics referenced above, and an endorser of the productis actually a former physician who was stripped of his medical license following a conviction for Medicaid fraud.
In relation to the money back guarantee, GVP offers a full refund of the purchase price, less the shipping charge, for a guarantee period running from the date of the delivery for the same number of months as the monthly supply of Avacor purchased. If the product is not fully used, the remaining product must be returned. Taking the figures supplied by an officer of GVP and adjusting them to an annual basis, annual orders in the past have been roughly between $10 and $13 million, of which approximately $2.3 million is refunded a year, representing 17% to 20% of the purchases. It is asserted that approximately 35% of purchasers order the product again.
As to damages, the complaint alleges that the shampoo and nutritional supplement add no [*2]value to the topical solution, resulting in the consumer paying a purchase price for Avacor that is 300% greater than the purchase price for other minoxidil solutions. {**3 Misc 3d at 175}The plaintiffs request monetary recoupment of the purchase price of the product, an injunction against unlawful practices, and related relief.

Maine Consumer Protection Statutory Claims

Defendants seek dismissal of the causes of action alleging violations of Maine's Deceptive Trade Practices Act (Maine DTPA) (Me Rev Stat Ann, tit 10, § 1211 et seq.) and Maine's Unfair Trade Practice Act (Maine UTPA) (Me Rev Stat Ann, tit 5, § 205-A et seq.).
As to the second cause of action which seeks damages only and pleads a violation of the Maine's DTPA, defendants correctly urge that the damages claim must fall because only injunctive relief is available under that statute (Me Stat Ann, tit 10, § 1213; 
see, generally describing statute, Sebago Lake Camps, Inc. v Simpson, 434 A2d 519 [Sup Jud Ct Me 1981]). Accordingly, this monetary claim is severed and dismissed.
In relation to the Maine UTPA claim, the statute applies to "unfair or deceptive acts or practices in the conduct of any trade or commerce" (Me Rev Stat Ann, tit 5, § 207). It is recognized that "[n]either term as used in Maine's UTPA can be precisely defined, and their applicability should be determined on a case by case basis" (Guiggey v Bombardier, 615 A2d 1169, 1172 [Sup Jud Ct Me 1992]).
As to the claim for Maine UTPA monetary relief, defendants contend dismissal must occur because plaintiffs did not properly comply with Maine's requirement that plaintiffs make a written demand for relief to a potential defendant at least 30 days prior to the filing of such an action for damages, which allows a defendant a period of time to offer to pay such damages (Me Rev Stat Ann, tit 5, § 213 [1-A]). This objection does not support dismissal under Maine law (Oceanside at Pine Point Condominium Owners Assn. v Peachtree Doors, Inc., 659 A2d 267, 273 [Sup Jud Ct Me 1995] [holding notice not jurisdictional and observing, "(s)ection 213 (1-A) . . . is designed to encourage settlement . . . A defendant may make a tender of settlement in response to the notice and demand for relief. If the plaintiff rejects such tender and prevails in court, attorney fees and costs otherwise recoverable become unavailable if the judgment recovered is less favorable than the rejected settlement offer"]). Rather than dismiss a claim for deficient notice and demand, the accepted remedy is to grant a stay so defendants may consider their response to the demand, which stay is granted to the extent set forth below.{**3 Misc 3d at 176}
Because there is no argument presented that the right to secure injunctive relief under Maine's UTPA should be stayed or would be abated if a settlement offer were made, the court will rule upon the balance of the statutory arguments raised by defendants. Defendants' contention that plaintiffs have not sustained a legally cognizable and sufficiently substantial injury to support this claim is rejected. The plaintiffs do assert the requisite economic injury under the principles laid out in Bartner v Carter (405 A2d 194 [Me 1979]), in which the Supreme Judicial Court of Maine engaged in an extensive review of the history of UTPA § 213 (1), which permits private suit by a consumer who "suffers any loss of money or property" as a result of a deceptive practice. This statutory language requires that a plaintiff be actually injured, precluding academic suits brought, for example, by a person who merely sees a deceptive sign in a store window (405 A2d at 202), and creates a restitutionary remedy which "[o]n its face, [*3]without the benefit of a strained interpretation . . . appears to rule out recovery, under the statute, of several kinds of nonrestitutionary damages, such as damages for personal injury, mental distress or loss of time" (405 A2d at 202-203). This pleading properly claims an injury that is "not trivial or merely speculative" and, by reason of the deceit claimed, would be unavoidable by a consumer (Tungate v MacLean-Stevens Studios, Inc., 714 A2d 792, 797 [Sup Jud Ct Me 1998] [finding deficient a claim of injury for a price difference which could not have exceeded $1.25 on the facts, and applying test of 15 USC § 45 (n) that an "unlawful act or practice" can be found only if "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition"]).
The last argument defendants raise is that Avacor's limited money back guarantee insulates them from a fraudulent or deceptive practices claim. Because Maine case law on this point is wanting, the court turns to federal precedent (Tungate v MacLean-Stevens Studios, Inc., supra, 714 A2d at 797), which provides the ready answer that the "argument . . . [has] been repeatedly rejected" and holds that a money back guarantee does not render consumer deceit harmless (Federal Trade Commn. v Think Achievement Corp., 312 F3d 259, 261 [7th Cir 2002]; see also Federal Trade Commn. v Pantron I Corp., 33 F3d 1088, 1103, 1105 [9th Cir 1994] ["the existence of a money-back guarantee is insufficient reason as a matter of law to preclude a . . {**3 Misc 3d at 177}. remedy" and otherwise holding that a product claiming to "cause the body to generate new hair in parts of the scalp where no hair currently exists" is a "drug" subject to federal regulation]). Accordingly, this defense is rejected.
As a final note relating to the Maine UTPA, Maine Revised Statutes Annotated, title 5, § 213 (3) requires that a court clerk provide the Maine Attorney General with notice of suit and a copy of the initial pleading "[u]pon commencement of any action" brought under the statute. The court directs that plaintiffs' counsel forward a notice and copy of the amended complaint to such official, as a substitute for notice being given by a court clerk.

New York Consumer Protection Statutory Claims

The fifth cause of action includes claims under New York's General Business Law §§ 349 and 350. General Business Law § 349 (a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and General Business Law § 350 similarly declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." The act complained of must be consumer oriented, be "misleading in a material way" and cause injury, but the practice "need not reach the level of common-law fraud" (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000]). Both statutes permit an injured consumer to sue in his or her own name (General Business Law § 349 [h]; § 350-d; see generally Karlin v IVF Am., 93 NY2d 282, 291 [1999] [describing statutes, and referencing unpublished decision applying statutes to the sales of products for treatment of balding and baldness]).
However, some part of the underlying transaction must occur in New York State and the New York action of a defendant cannot merely be " 'hatching a scheme' or originating a marketing campaign in New York" (Goshen v Mutual Life Ins. Co. of N.Y., 98 [*4]NY2d 314, 324 [2002]). While a telemarketing site and even the receipt of Internet orders physically within New York State appear to form a New York locus for a transaction covered by the New York State consumer protection statutes (see, respectively, People ex rel. Spitzer v Telehublink Corp., 301 AD2d 1006, 1009 [2d Dept 2003]; People v Lipsitz, 174 Misc 2d 571 [Sup Ct, NY County 1997, Lebedeff, J.], with the latter case cited in Karlin v IVF Am., supra, 93 NY2d at 291), this complaint pleads no consumer action or contact occurring within New York State as to the out-of-state plaintiffs.
{**3 Misc 3d at 178}The New York plaintiff who allegedly was "deceived in New York" states a cognizable cause of action (Goshen v Mutual Life Ins. Co. of N.Y., supra, 98 NY2d at 326), and has sufficiently pleaded a deception bearing upon the pricing of the product (Small v Lorillard Tobacco Co., 94 NY2d 43, 56 [1999]). The court finds the argument that the money back guarantee defeats liability meritless.
For the above reasons, the court severs and dismisses these claims as to the out-of-state plaintiffs and denies this branch of the motion as to the plaintiff who resides in New York.

Common-Law Fraud and Negligent Misrepresentation

The pleading states that the plaintiffs reside in Pennsylvania, Texas and New York, and the purchases took place in Maine. The parties profess that the motion puts at issue the application of the common law of New York and Maine, as well as additional jurisdictions which lack a clear current relationship to the parties and the underlying transactions.
Given the legal complexity which is necessarily involved when addressing multiple common-law fraud and negligent misrepresentation claims, the court defers ruling upon this branch of the defendants' motion until the stay imposed below has expired. If defendants choose to make payment pursuant to the demand made by plaintiffs under the Maine UTPA (Me Rev Stat Ann, tit 5, § 213 [1-A]), it may be that the tort claims seeking monetary damages will be mooted.
If these tort claims remain viable, the court will require the guidance of counsel so that it appropriately may fulfill its mandate to ascertain and take judicial notice of the common law of relevant jurisdictions within the United States (CPLR 4511 [a])an expansion on the older practice under which such notice was a permitted, but not mandated, judicial function (Pfleuger v Pfleuger, 304 NY 148 [1952]). Only with a firm assurance that plaintiffs actively assert a claim under the law of a given jurisdiction may the court issue a ruling in a manner consistent with the policy of judicial restraint (Lunney v Prodigy Servs. Co., 94 NY2d 242, 252 [1999] ["courts cannot go beyond the issues necessary to decide the case at hand. An ambition of that sort would entail something very much like drafting advisory opinions. Misdirected or misapplied, they can create the very kind of uncertainty, or confusion, that purposeful decisional law seeks to eliminate"]; Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994] ["the judiciary's self-{**3 Misc 3d at 179}imposed policy of restraint . . . precludes the issuance of advisory opinions"]).
Counsel may be required to address (1) the test for the occurrence of a given tort subject to the jurisprudence of a particular jurisdiction, (2) relevant cases which set forth applicable choice of law policies, and (3) the standard to be applied to determine if a tort is properly pleaded under the law of a given locality. The court reserves the right to request that the parties address other and further issues.

Preemptive Denial of Class Certification

The defendants interpose a preemptive request that class certification be denied. It is a proper statement of the law that, where plaintiff has not yet requested a class certification, a defendant's request for denial of class certification is to be granted only to the extent a substantive claim is dismissed. In such a posture, any denial of class certification is incidental to finding deficient a claim or claims (Weinstein-Korn-Miller, NY Civ Prac ¶ 902.12 [1999] ["If there is no cause of action, then the application for class status becomes academic"]; see Wojciechowski v Republic Steel Corp., 67 AD2d 830 [4th Dept 1979]; see Cornell Univ. v Dickerson, 100 Misc 2d 198, 203-206 [Sup Ct, Tompkins County 1979] [granting dismissal of complaint on summary judgment and denial of class action certification]).
Accordingly, this request is granted to the extent substantive claims are dismissed above and otherwise held in abeyance. Further claims may yet fall if defendants offer to pay the damages under the Maine UTPA presuit claim for damages procedure discussed above, which may obviate the corresponding class action allegations (see Yollin v Holland Am. Cruises, 97 AD2d 720, 721 [1st Dept 1983] ["courts may consider, in addition to the factors enumerated in CPLR 902, the merits of the action, with a view toward eliminating (deficient) suits as early as possible"]). If there is a dispute as to whether or under what conditions plaintiffs can be compelled to accept an offer to pay, the parties may be directed to prepare supplemental papers.

Stay of This and Other Litigation

The defendants also seek an injunction staying commencement of identical litigation by these named plaintiffs in other jurisdictions until "there is a determination regarding this action and its status as a viable class action." The litigation at bar was the first commenced of a number of seemingly identical suits {**3 Misc 3d at 180}brought by plaintiffs and plaintiffs have professed a desire herein eventually to invoke the common law and statutes of all other United States jurisdictions if class certification is granted. The court finds that the interests of justice provide adequate reason to place an appropriate bar on the ability of the named plaintiffs to commence and pursue identical claims before other forums pending a determination of the scope and nature of this litigation and a further order of this court (Reiner v Kane, 9 AD2d 773 [2d Dept 1959], lv denied 9 AD2d 893 [2d Dept 1959]; 67A NY Jur 2d, Injunctions § 117 ["Injunction Against Judicial Proceedings . . . Generally"]).
In relation to the stay granted by reason of the Maine UTPA presuit claim for damages (Me Rev Stat Ann, tit 10, § 213 [1-A]), pending further order, the court stays (1) any potential repleading of the complaint and (2) the submission of any further papers in relation to the instant motion and any future motions. The conference scheduled with the court shall go forward, at which the court will determine whether the stay shall extend for 30 days.
This decision constitutes the interim order of this court. The court grants the motion to the extent set forth above and denies summary judgment. As to any claims dismissed, they are dismissed as to all defendants except as otherwise indicated with respect to the New York [*5]resident plaintiff. The balance of the motion to dismiss is held in abeyance and a stay is issued consistent with the foregoing. With respect to the preliminary injunctive relief, the parties are directed to settle an order, which shall be supported by affidavits detailing the basis for the amount of the injunction bond requested.