IVEY, BARNUM & O'MARA *v.* INDIAN HARBOR
PROPERTIES, INC., ET AL.
(11050)

PETERS, PARSKEY, SHEA, SPONZO and SPADA, Js.

Argued March 10—decision released June 28, 1983

L. Douglas Shrader, with whom, on the brief, was *Joseph C. Gasparrini,* for the appellants (defendants).

*Samuel J. Tedesco,* with whom, on the brief, was *Joseph R. Tedesco,* for the appellee (plaintiff).

*Robert M. Langer* and *David E. Ormstedt,* assistant attorneys general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, filed a brief as amici curiae.

PETERS, J. The dispositive issue in this appeal is the extent to which Connecticut's Unfair Trade Practices Act; General Statutes §§ 42-110a through 42-110q (CUTPA, the act); provides a cause of action to clients of a law firm contesting a law firm's suit to collect legal fees. The plaintiff, Ivey, Barnum & O'Mara, a partner-

ship organized for the practice of law, brought an action to recover the reasonable value of legal services rendered and disbursements made on behalf of its clients, the defendants Indian Harbor Properties, Inc., Showboat Inn, Inc., and Joseph B. Keating. The defendants counterclaimed that the plaintiff's attempt in its lawsuit to collect interest on the alleged unpaid balance constituted an unfair trade act or practice in violation of General Statutes § 42-110b.[1] In addition, the defendant Keating counterclaimed and raised a special defense that the plaintiff had engaged in an unfair trade act or practice, which rendered the plaintiff's claim unenforceable, because the plaintiff was attempting to collect a debt which the plaintiff knew was not due and owing. The plaintiff moved to strike the counterclaims and special defense insofar as they stated claims under CUTPA, on the ground that CUTPA does not apply to the furnishing of legal services by an attorney. The trial court granted the plaintiff's motion to strike and the defendants have appealed from the judgment which was rendered pursuant to Practice Book § 157. See *McInerney* v. *Cecio Bros., Inc.,* 189 Conn. 547, 549, 457 A.2d 303 (1983); *Kilbride* v. *Dushkin Publishing Group, Inc.,* 186 Conn. 718, 724–25, 443 A.2d 922 (1982).

The facts that govern this appeal are not presently in dispute.[2] The plaintiff performed legal services for the corporate defendants from July, 1977 to October, 1979 in connection with two legal actions in the

---

[1] General Statutes § 42-110b provides, in subsection (a): "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[2] A motion to strike challenges the legal sufficiency of a pleading. Practice Book § 152. In deciding the plaintiff's motion to strike, therefore, the trial court was obliged, as are we, to assume the truth of the allegations contained in the defendants' special defense and counterclaim. *Drazen* v. *Drazen,* 180 Conn. 572, 573 n.3, 430 A.2d 1288 (1980); *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980).

Superior Court. On behalf of the defendant Keating, the plaintiff performed legal services from January, 1979 to May, 1979, representing him in the defense of an indictment in the state of Arizona.

It was not in the performance of these services that the claimed violations of CUTPA occurred, nor did the alleged violations occur in any attempt by the plaintiff, prior to the actual commencement of its lawsuit, to collect its fees. Rather, the claimed CUTPA violations occurred exclusively in the plaintiff's conduct of litigation to recover its claimed fees.

On March 11, 1980, the plaintiff instituted suits against the defendants seeking recovery for the reasonable value of legal services. In those actions the plaintiff sought recovery of interest computed at the rate of 1 percent per month on the amount claimed as due. At no prior time had the plaintiff and any defendant agreed that the defendants would be charged interest on any claimed unpaid balance resulting from legal services rendered by the plaintiff. The plaintiff's actions were withdrawn a week later when the defendants, through their counsel, had appeared and filed a motion to dismiss. On May 12, 1980, the plaintiff renewed its claims, which were dismissed by the trial court.[3] In the present action, commenced in August of 1980, the plaintiff originally claimed the 1 percent interest charge on the principal balance of $118,605.48, but deleted that claim by an amendment to its complaint on March 11, 1981.

With respect to the defendant Keating, the plaintiff had, subsequent to the performance of its legal services, rendered a statement of account in the amount of $5523.52. In the present action, the plaintiff seeks to

---

[3] Neither the trial court's order dismissing the prior action nor the basis for its ruling appears in the record.

recover $10,966.52 for the same services, which debt, according to Keating, "members of the plaintiff firm know is not due and owing."

In granting the plaintiff's motion to strike, the trial court determined that claims of attorney misconduct are not cognizable under CUTPA, the court having concluded that CUTPA regulations and procedures unconstitutionally interfere with the exclusive judicial power to discipline attorneys. Since the date of the trial court's decision, we have rejected the proposition that regulation of attorneys pursuant to CUTPA necessarily intrudes on the judicial power in an unconstitutional manner. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 461 A.2d 938 (1983). We therefore do not adopt the reasoning of the trial court. We may, however, affirm its judgment if the result it reached can be supported for a different reason. *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 54, 434 A.2d 306 (1980); *State* v. *Assuntino,* 180 Conn. 345, 353, 429 A.2d 900 (1980); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978). Notwithstanding the constitutional permissibility of the defendants' claims, if the facts which the defendants allege are insufficient to frame their cause of action, they cannot prevail. Because we read the statute as not proscribing the acts alleged, we conclude that the defendants have not stated a cause of action under CUTPA and, therefore, that the trial court did not err in granting the plaintiff's motion to strike.

Our decision in *Heslin,* while it recognizes the potential liability of attorneys for violation of CUTPA, does not mean that every claimant who alleges attorney misconduct states a cause of action under the act, nor that every dispute over the value of goods and services supports a claim for statutory recovery. A private recovery can only be predicated upon a violation of

General Statutes § 42-110b (a),[4] which provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

For guidance in determining what may constitute unfair or deceptive acts or practices, CUTPA directs us to the "interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. [§] 45 (a) (1)),[5] [FTC Act] as from time to time amended." General Statutes § 42-110b (b). In measuring the sufficiency of a private CUTPA claim, recourse to precedent under the FTC Act is concededly somewhat problematic, since the federal act creates no express private cause of action and the federal courts have refused to recognize an implied one. *Naylor* v. *Case & McGrath, Inc.,* 585 F.2d 557, 561 (2d Cir. 1978); *Beckenstein* v. *Hartford Electric Light Co.,* 479 F. Sup. 417, 423 (D. Conn. 1979). For the Federal Trade Commission to proceed against unfair or deceptive practices, furthermore, it must first determine that the challenged activity is contrary to a specific and substantial public interest. *Federal Trade Commission* v. *Raladam Co.,* 283 U.S. 643, 648–49, 51 S. Ct. 587, 75 L. Ed. 1324 (1931); *Spiegel, Inc.* v. *Federal Trade Commission,* 494 F.2d 59, 62 (7th Cir.), cert. denied, 419

[4] The statutory provision which creates the private cause of action under CUTPA is General Statutes § 42-110g (a), which provides: "Any person who suffers any ascertainable loss of money or property, real or personal, *as a result of the use or employment of a method, act or practice prohibited by section 42-110b,* may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." (Emphasis added.)

[5] 15 U.S.C. § 45 (a) (1) (1976) provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

U.S. 896, 95 S. Ct. 175, 42 L. Ed. 2d 140 (1974); see 15 U.S.C. § 45 (b). While the Federal Trade Commission possesses broad discretion in determining whether a proceeding brought by it is in the public interest; *Porter & Dietsch, Inc.* v. *Federal Trade Commission,* 605 F.2d 294, 308 (7th Cir. 1979), cert. denied, 445 U.S. 950, 100 S. Ct. 1597, 63 L. Ed. 2d 784 (1980); *Guziak* v. *Federal Trade Commission,* 361 F.2d 700, 704 (8th Cir. 1966), cert. denied, 385 U.S. 1007, 87 S. Ct. 712, 17 L. Ed. 2d 545 (1967); it is not the commission's function to intervene in private disputes; *Federal Trade Commission* v. *Klesner,* 280 U.S. 19, 27–28, 50 S. Ct. 1, 74 L. Ed. 138 (1929); *Exposition Press, Inc.* v. *Federal Trade Commission,* 295 F.2d 869, 873 (2d Cir. 1961), cert. denied, 370 U.S. 917, 82 S. Ct. 1554, 8 L. Ed. 2d 497 (1962); nor to vindicate merely private rights. *Porter & Dietsch, Inc.* v. *Federal Trade Commission,* supra; *Montgomery Ward & Co.* v. *Federal Trade Commission,* 379 F.2d 666, 672 (7th Cir. 1967); *Henry Broch & Co.* v. *Federal Trade Commission,* 261 F.2d 725, 728 (7th Cir. 1958), modified on other grounds, 285 F.2d 764 (7th Cir.), rev'd. on other grounds, 363 U.S. 166, 80 S. Ct. 1158, 4 L. Ed. 2d 1124, reh. denied, 364 U.S. 854, 81 S. Ct. 30, 5 L. Ed. 2d 77 (1960).

In creating a private cause of action under CUTPA, the legislature has thus departed significantly from the enforcement scheme of the federal act. Recognizing that exclusively administrative enforcement might prove insufficient to serve the remedial purpose of the act;[6] General Statutes § 42-110b; *Hinchliffe* v.

---

[6] We have noted previously in reviewing CUTPA's legislative history, that the General Assembly, in enacting CUTPA, contemplated that private litigation would play an essential role in enforcement of the act. See *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 615 n.5, 440 A.2d 810 (1981). This legislative intent was explicitly stated in the debates preceding the original enactment of CUTPA in 1973. "[M]ost

*American Motors Corporation,* 184 Conn. 607, 616–17, 440 A.2d 810 (1981); the legislature has created incentives for private vindication of the public interest. CUTPA encourages the conduct of private litigation by permitting recoveries which include punitive damages[7] and attorney's fees.[8] See *Hinchliffe*

important . . . the bill provides for private enforcement by individual consumers who have been injured by prohibited acts." 16 H. R. Proc., Pt. 14, 1973 Sess., p. 7323 (remarks of Representative Howard A. Newman); see also 16 S. Proc., Pt. 8, 1973 Sess., p. 3590 (remarks of Senator Stanley H. Page).

During the 1976 debate on amendments to CUTPA which provided additional incentives for private litigation (enacted as Public Acts 1976, No. 76–303), the necessity for private enforcement was reiterated. "The purpose of this act is to stop unfair or deceptive practices. The only way to accomplish that effectively is to encourage litigation by private parties." 19 H. R. Proc., Pt. 6, 1976 Sess., p. 2191 (remarks of Representative Raymond C. Ferrari).

Similar statements stirred the debate over Public Acts 1979, No. 79–210 which, inter alia, provided for venue in the judicial district of a private plaintiff bringing suit under CUTPA. "The bill in general would promote greater cooperation between public and private efforts to enforce [the Act]. The Attorney General's office is hampered in this enforcement effort by limited staff. Private litigation under this act is essential and the proposal would ease the burden on private individuals and thus encourage private litigation." 22 S. Proc., Pt. 8, 1979 Sess., p. 2575 (remarks of Senator Steven C. Casey). For further discussion of the private litigant's role in CUTPA, see *Murphy* v. *McNamara,* 36 Conn. Sup. 183, 196n, 416 A.2d 170 (1979); Langer & Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B.J. 388, 390–95 (1980).

[7] General Statutes § 42-110g (a) provides: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

[8] General Statutes § 42-110g (d) provides: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. In a class action in which there is no monetary recovery,

v. *American Motors Corporation*, supra, 617–18. CUTPA's substantive provisions provide a further incentive for private litigation because under the guideline provision of the FTC Act; 15 U.S.C. § 45 (a) (1); they make cognizable unfair or deceptive practices broader than those which were illegal at common law or by criminal statute. *Federal Trade Commission* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 241–44, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972); *Federal Trade Commission* v. *Motion Picture Advertising Service Co.*, 344 U.S. 392, 394, 73 S. Ct. 361, 97 L. Ed. 426 (1953); *Spiegel, Inc.* v. *Federal Trade Commission*, 540 F.2d 287, 292 (7th Cir. 1976); *Commonwealth* v. *DeCotis*, 366 Mass. 234, 241, 316 N.E.2d 748 (1974).

CUTPA's incentives for private litigation are not unlimited, however, and in no way abrogate the key prerequisite to any private action, stated in General Statutes § 42-110g (a),[9] that the person being sued must have engaged in unfair or deceptive acts or practices. As we have noted, the federal act which guides us in defining such acts or practices requires some recognizable public interest in preventing the challenged wrongdoing. We adopt the same standard; accord *Zeeman* v. *Black*, 156 Ga. App. 82, 84, 273 S.E.2d 910 (1980); *Beslity* v. *Manhattan Honda*, 113 Misc. 2d 888, 892, 450 N.Y.S.2d 278 (1982); *Lightfoot* v. *MacDonald*, 86 Wash. 2d 331, 334, 544 P.2d 88 (1976); contra *Bartner* v. *Carter*, 405 A.2d 194, 201 (Me. 1979); *Baldassari* v. *Public Finance Trust*, 369 Mass. 33, 44–46, 337

but other relief is granted on behalf of a class, the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorneys' fees. In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief."

[9] See footnote 7, supra, for text of General Statutes § 42-110g (a).

N.E.2d 701 (1975);[10] and hold that suits undertaken pursuant to CUTPA must demonstrate some nexus with the public interest. This minimal threshold requirement comports with the enforcement function served by private litigants proceeding under CUTPA, who act as "private attorneys general" in vindicating the public interest. As such, the threshold should not be so high as to impede the act's remedial purpose, nor so low as to encourage harassment or coercion by plaintiffs who, while claiming the expansive procedural and substantive rights CUTPA creates, are aggrieved by a purely private dispute.

We recognize that when the commissioner of consumer protection is acting to enforce CUTPA, the initial determination of whether a proceeding is in the public interest constitutes an exercise of her discretion. As such it is subject only to limited review by the court in which the proceeding is brought. When a private litigant brings an action, however, the determination of whether the public interest is served by a particular suit falls in the first instance to the court.

With these considerations in mind we turn to the allegations of the defendants' counterclaim and special defense. The present dispute arose out of a long-term professional relationship between the plaintiff and the

---

[10] In *Bartner v. Carter,* 405 A.2d 194 (Me. 1979), and *Baldassari v. Public Finance Trust,* 369 Mass. 33, 337 N.E.2d 701 (1975), the courts suggested that the boundaries of a private consumer cause of action could not be determined by reference to the FTC Act. Neither case, however, was concerned with what may constitute unfair or deceptive practices in the conduct of a trade or commerce. The issue in *Bartner* was whether a claim for restitution was essential to a private cause of action under Maine's statutory analogue to CUTPA, Me. Rev. Stat. Ann. tit. 5, § 213 (1979). *Bartner v. Carter,* supra, 202–203. In *Baldassari,* the question was whether "severe emotional distress" satisfied the Massachusetts requirement that one bringing a claim under the state's consumer protection statute; Mass. Gen. Laws c. 93A, § 9 (1); must have suffered "loss of money or property." *Baldassari v. Public Finance Trust,* supra, 44–46.

defendants. There has been no allegation that the relationship was established through advertisement, misleading or otherwise, in the public media; cf. *Hinchliffe* v. *American Motors Corporation,* supra, 611–12; or, indeed, that the plaintiff conducts any advertising whatsoever. Nor has the defendant alleged that the plaintiff's billing practices were abusive, coercive or in any way unfair. The defendants' allegations of misconduct focus solely on the plaintiff's lawsuit; to wit, the filing of three complaints claiming interest on a liquidated debt, and the filing of two complaints claiming recovery knowingly in excess of the amount owed. With respect to these claims, we observe that they contain no allegation of any abuse of process or of a deliberate and systematic attempt on the part of the plaintiff to inconvenience the defendants in their defense of the action. Compare *Spiegel, Inc.* v. *Federal Trade Commission,* 540 F.2d 287, 290–93 (7th Cir. 1976).[11] If the actions of the plaintiff are to constitute unfair or deceptive acts, therefore, the unfairness or capacity to deceive must inhere in the nature of the claims themselves.

With respect to the plaintiff's claim for interest on the unpaid debt, we express no opinion as to its merits.[12] We can perceive nothing prima facie unfair or deceptive, however, in submitting to a court a claim for interest on a liquidated balance claimed as due and owing. See *General Electric Supply Co.* v. *Southern*

---

[11] In *Spiegel, Inc.* v. *Federal Trade Commission,* 540 F.2d 287 (7th Cir. 1976), the United States Court of Appeals for the Seventh Circuit upheld an order enjoining Spiegel, Inc.'s practice of instituting collection suits in Illinois, against retail credit mail order purchasers who resided in states other than Illinois. Id., 290–93.

[12] Although, as noted earlier, the plaintiff withdrew its claim for interest, the defendants have persisted in claiming that the very bringing of the lawsuit caused them injury and violated General Statutes § 42-110b (a).

*New England Telephone Co.,* 185 Conn. 583, 605–606, 441 A.2d 581 (1981); *Ruscito* v. *F-Dyne Electronics Co.,* 177 Conn. 149, 163, 411 A.2d 1371 (1979); *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 274–75, 287 A.2d 374 (1971); *Giffen* v. *Tigerton Lumber Co.,* 26 Wis. 2d 327, 333–34, 132 N.W.2d 572 (1965).

Keating's claim that the plaintiff is suing to recover amounts which it knows to be not due and owing is more troublesome. Although there is again no allegation that the professional relationship between the parties was established through advertising, in the public media or elsewhere, the alleged practice falls facially within the definition of practices described by the federal trade commission as immoral, unethical, oppressive and unscrupulous. *Spiegel, Inc.* v. *Federal Trade Commission,* 540 F.2d 287, 293 (7th Cir. 1976).[13] Such practices, when they occur, constitute a deplorable misuse of judicial process. They are, however, practices for which common law remedies presently exist.[14] See *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 538, 457 A.2d 656 (1983); *Vandersluis*

---

[13] "The Commisson has described the factors it considers in determining whether a practice that is neither in violation of the anti-trust laws nor deceptive is nevertheless unfair: '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed. Reg. 8355 (1964)." *Federal Trade Commission* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972).

[14] We reiterate, as we noted earlier, that the existence of common law or other statutory remedies does not necessarily preclude recourse to CUTPA. See text, supra, 536.

v. *Weil,* 176 Conn. 353, 356, 407 A.2d 982 (1978); *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 194, 91 A.2d 778 (1952). In the circumstances of the present case, nothing in Keating's factual allegations serves to demonstrate that his dispute is other than a purely private one.

The special relief afforded by CUTPA requires, in a private dispute, the assertion of a public interest that is "specific and substantial." *Federal Trade Commission* v. *Klesner,* 280 U.S. 19, 28, 50 S. Ct. 1, 74 L. Ed. 138 (1929); *Henry Broch & Co.* v. *Federal Trade Commission,* 261 F.2d 725, 728 (7th Cir. 1958), modified on other grounds, 285 F.2d 764 (7th Cir.), rev'd. on other grounds, 363 U.S. 166, 80 S. Ct. 1158, 4 L. Ed. 2d 1124, reh. denied, 364 U.S. 854, 81 S. Ct. 30, 5 L. Ed. 2d 77 (1960). Under guiding federal law, allegedly deceptive acts or practices which arise out of a private controversy are actionable only if the acts or practices have a potential effect on the general consuming public. *Northam Warren Corporation* v. *Federal Trade Commission,* 59 F.2d 196, 198 (2d Cir. 1932); *California Apparel Creators* v. *Wieder of California,* 68 F. Sup. 499, 506 (S.D.N.Y. 1946). The private action authorized by CUTPA; General Statutes § 42-110g; is intended to provide additional sanctions to deter unfair trade practices that injure the general consuming public, rather than to provide additional remedies for the redress of entirely private wrongs. Accord *Zeeman* v. *Black,* 156 Ga. App. 82, 84, 273 S.E.2d 910 (1980).

There is no error.

In this opinion the other judges concurred.