### GEORGE WILSON *v.* FIREMEN'S FUND INSURANCE COMPANY

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 297309
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed April 2, 1985

*Ronald E. Cassidento,* for the plaintiff.

*Halloran, Sage, Phelon & Hagarty,* for the defendant.

HAMMER, J. The plaintiff has brought this action for damages against the defendant, who was his employer's workers' compensation insurance carrier at the time the plaintiff was injured in the course of his employment on May 22, 1981.

The first count of the complaint alleges that the defendant paid benefits to the plaintiff "in an envelope routinely used by the defendant in the course of its business, which envelope falsely purported to list the complete range of benefits available to the plaintiff, when in fact, there were other benefits available to the plaintiff." The plaintiff claims that "[t]he defendant's misrepresentation of available benefits misled and deceived the plaintiff" in violation of § 42-110b of the Connecticut Unfair Trade Practices Act (CUTPA). The second count alleges the same facts and claims that the defendant thereby violated § 38-61 of the Connecticut Unfair Insurance Practices Act (CUIPA).

The defendant has moved to strike the first count on the ground that the plaintiff "has failed to demonstrate a 'nexus' with the public interest as required in cases arising before June 8, 1984," the effective date of Public Acts 1984, No. 84-468. The defendant claims that § 2 of that act, which amended § 42-110g (a) of the General Statutes by providing that "[p]roof of public interest or public injury shall not be required in any action brought under this section," does not apply to conduct alleged to be in violation of CUTPA which occurred prior to the effective date of the amendment.

The plaintiff opposes the motion to strike on the ground that Public Acts 1984, No. 84-468, was intended by the legislature to apply retroactively. He argues in the alternative that the first count of the complaint sufficiently alleges a nexus between the public interest and the plaintiff's CUTPA claim as required under the rule stated in *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 461 A.2d 1369 (1983), prior to the enactment of Public Acts 1984, No. 84-468.

I

The Supreme Court, in *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, supra, decided on

June 28, 1983, held that "suits undertaken pursuant to CUTPA must demonstrate some nexus with the public interest. This minimal . . . threshold should not be so high as to impede the act's remedial purpose, nor so low as to encourage harassment or coercion by plaintiffs who, while claiming the expansive procedural and substantive rights CUTPA creates, are aggrieved by a purely private dispute." Id., 537.

In response to the court's decision that CUTPA could not be used as a vehicle to redress wholly private wrongs, and because the General Assembly "was not content with this constricting interpretation of CUTPA by the court . . . it passed Public Act 84-468 . . . which in part negated the holding in *Ivey, Barnum.*" Bartlett & Romano, "Connecticut Unfair Trade Practices Act and Connecticut Unfair Insurance Practices Act: Expanding Legal Horizons," 58 Conn. B.J. 302, 311 (1984). "In fact, therefore, the public interest requirement is non-existent and the *Ivey, Barnum* decision as it relates to the threshold, is repealed by legislative fiat." Id.

Section 42-110b (d) of the General Statutes provides that "[i]t is the intention of the legislature that this chapter [CUTPA] be remedial and be so construed." An analysis of the legislative history of the act reveals that it has been amended repeatedly for the purpose "of enhancing the attractiveness of the private right of action." Bartlett & Romano, supra, 306. The legislature, in its earlier amendments to CUTPA, was attempting to permit the courts of this state "to find methods, acts or practices not heretofore specifically declared unlawful by the FTC or the federal courts to be prohibited by the CUTPA." Langer & Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B.J. 388, 391 (1980)

A statutory enactment which does not create new rights or take away vested rights, but which only operates to promote the remedy or to confirm those rights, does not ordinarily come within the legal conception of a retrospective law or the general rule against the retrospective operation of statutes. 73 Am. Jur. 2d, Statutes § 354. Where an amendment construes or clarifies an existing statute it must be accepted as the legislative declaration of the meaning of the original act. *Hartford* v. *Suffield,* 137 Conn. 341, 346, 77 A.2d 760 (1950). This is particularly true where the language used reflects a legislative intent to overcome a prior judicial construction or to relax a preexisting judicially imposed requirement. *Brown* v. *Cato,* 147 Conn. 418, 421, 162 A.2d 175 (1960).

The legislative history of Public Acts 1984, No. 84-468, contains the following explanation of its purpose by Representative Maurice B. Mosley: "Mr. Speaker, this bill basically *makes clear* that there's no requirement for proving a public interest or injury . . . under the Unfair Trade Practices Act." (Emphasis added.) 27 H.R. Proc., Pt. 19, 1984 Sess., p. 6769. Where the statements made by the proponents of a bill show that the purpose of a proposed amendment is to clarify, rather than alter, the original legislative intent, it will be deemed to apply retroactively. *Koskoff, Koskoff & Bieder* v. *Allstate Ins. Co.,* 187 Conn. 451, 455 n.3, 446 A.2d 818 (1982).

Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction. *Red Lion Broadcasting Co.* v. *FCC,* 395 U.S. 367, 380–81, 89 S. Ct. 1794, 23 L. Ed. 2d 371 (1969). Accordingly, the court finds that the legislature's rejection of the *Ivey, Barnum* "public interest" requirement was intended "to clarify the statute rather

than to effect a substantive change." *Norfolk & Dedham Mutual Fire Ins. Co.* v. *Sagnella,* 37 Conn. Sup. 806, 808, 437 A.2d 150 (1981).

## II

Assuming, arguendo, that Public Acts 1984, No. 84-468, was not intended by the legislature to operate retroactively, the court will consider the plaintiff's alternative argument that the first count of the complaint sufficiently alleges a nexus between the public interest and his CUTPA claim to satisfy the requirement of the rule stated in *Ivey, Barnum.* To the extent that the motion to strike tests whether the defendant's alleged conduct constitutes an unfair trade practice, the court must construe the challenged pleading in the manner most favorable to the plaintiff, particularly in view of the statute's remedial nature which requires that it be liberally construed in favor of those persons who are entitled to its protection. See *Sprayfoam, Inc.* v. *Durant's Rental Centers, Inc.,* 39 Conn. Sup. 78, 79, 468 A.2d 951 (1983).

Paragraphs 7 and 8 of the plaintiff's first count allege a routine informational practice used by the defendant in the course of its business as a workers' compensation insurance carrier, which practice the plaintiff claims was deceptive and misleading. The defendant's brief refers to the material complained of as a "stuffer" designed to introduce the insurer to employee-beneficiaries as a "benefits provider" and to open up "a line of communication" between them.

In the *Ivey, Barnum* case, there was no allegation of any attempt to communicate with any persons other than the CUTPA complainants, nor was there any claim that the practices complained of were "abusive, coercive or in any way unfair." *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* supra, 538. As the court noted, the focus was exclusively on the profes-

sional relation between the parties to the action, and allegedly deceptive acts or practices which arise out of such a private controversy "are actionable only if the acts or practices have a potential effect on the general consuming public." Id., 540. The plaintiff's complaint in this case alleges deceptive acts and practices which have a potential effect, at least, on other similarly situated workers' compensation claimants who become entitled to benefits from the defendant company.

Under federal standards, an unfair trade practice is one which "offends public policy as it has been established by statutes . . . [or which] is within at least the penumbra of some common-law, statutory, or other established concept of unfairness . . . ." *FTC* v. *Sperry & Hutchison Co.,* 405 U.S. 233, 244 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972). Even where the particular conduct complained of is not specifically prohibited by statute, it may be actionable where it offends a public policy as manifested by a statutory enactment. See *Conaway* v. *Prestia,* 191 Conn. 484, 493, 464 A.2d 847 (1983). The requisite "public nexus" may be established in connection with statutes which reflect a legislative intention to impose standards on the conduct of the particular business which is the subject of the CUTPA claim. See *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 567 n.11, 473 A.2d 1185 (1984).

Under § 42-110c of CUTPA only those activities specifically permitted under law by a regulatory agency are exempt, and the law has been construed to include the business of insurance both by reason of the restrictiveness of the statutory exemption and "the concurrent and overlapping nature of jurisdiction found in Section 38-60 et seq., administered by the Insurance Commissioner." Langer & Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B.J. 388,

392 (1980). Accordingly, the federal court for this district has recently held that CUTPA's prohibition of unfair trade practices extends to the business dealings of insurance companies even though other statutes also regulate the insurance industry. *Doyle* v. *St. Paul Fire & Marine Ins. Co.,* 583 F. Sup. 554, 556 (D. Conn. 1984).

Sections 38-60 and 38-61 of the General Statutes prohibit certain deceptive acts or practices in connection with the business of insurance. They include the misrepresentation of "the benefits, advantages, conditions or terms of any insurance policy"; General Statutes § 38-61 (1); and various unfair claim settlement practices. General Statutes § 38-61 (6). The plaintiff's pleading clearly alleges unfair trade practices which "have a potential effect on the general consuming public" within the meaning of the regulatory statute. *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* supra, 567.

If the plaintiff establishes that the deceptive acts or practices alleged in the complaint have a potential effect on the general consuming public he has established a sufficient "public interest" and he may recover "simply upon showing that the defendant engaged in a deceptive or unfair practice and that the plaintiff suffered an ascertainable loss of money or property thereby." *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 755, 474 A.2d 780 (1984).

For the foregoing reasons, the defendant's motion to strike the first count of the complaint is denied.