**L. COHEN & COMPANY, INC.**

v.

**DUN & BRADSTREET, INC.**

**Civ. No. H–85–686(JAC).**

United States District Court,
D. Connecticut.

Feb. 24, 1986.

John Andrew Kissel, Enfield, Conn., for plaintiff.

Eric Luckingbeal, Hartford, Conn., for defendant.

## RULING ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This action for damages resulting from the dissemination of an allegedly inaccurate credit report is before the court on the defendant's motions to dismiss and for summary judgment.

L. Cohen & Company ("the plaintiff") contends that Dun & Bradstreet, Inc. ("the defendant") prepared and distributed a credit report that erroneously indicated that the plaintiff was "slow" in meeting its financial obligations. The plaintiff asserts that the defendant thereby violated the Connecticut common law of defamation and invasion of privacy; the Connecticut Product Liability Act, C.G.S. § 52–572m *et seq.;* and the Connecticut Unfair Trade Practices Act, C.G.S. § 42–110a *et seq.* The defendant counters that the plaintiff cannot prevail under any of these causes of action. The court shall consider each of the defendant's arguments *seriatim.*

### I.

The defendant contends that count one of the complaint is time-barred under C.G.S. § 52–597, the statute of limitations applicable to defamation actions, because the plaintiff did not commence this suit "within two years from the date of the act complained of." The plaintiff responds that this suit is timely because it was brought within two years of a "publication" of the credit report by the defendant to one or more of its employees and because the two-year statute of limitations of C.G.S. § 52–597 began to run only when the plaintiff discovered or reasonably should have discovered the allegedly defamatory publication. The plaintiff also contends that count one is timely because it states a cause of action for invasion of privacy as well as for defamation.

### A.

It is apparently undisputed that the last dissemination of the credit report to somebody other than an employee of the plain-

tiff or the defendant occurred on May 26, 1983. *See* Affidavit of James M. Lenegan (filed Dec. 5, 1985) at ¶¶ 10, 11. This action was not commenced until July 12, 1985. Accordingly, if the court were to apply the general rule that the statute of limitations begins to run at the time that the allegedly defamatory material is published, *see Fouts v. Fawcett Publications,* 116 F.Supp. 535 (D.Conn.1953), the action would be untimely unless the dissemination of the material by a corporate defendant to its employees constitutes a "publication."[1]

The question of whether such a communication of allegedly defamatory material constitutes a "publication" has not been addressed by any Connecticut court or by any federal court applying Connecticut law. However, the question was answered in the negative by the Court of Appeals in *Halsell v. Kimberly-Clark Corporation,* 683 F.2d 285 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983), which upheld the district court's decision that the transmission of an allegedly defamatory memorandum from one employee of the defendant to another amounted to nothing more than "the corporation, through its agents, talking to itself." *Id.* at 288, *quoting Halsell v. Kimberly-Clark Corporation,* 518 F.Supp. 694 (D.Ark.1981) (applying Wisconsin law). Accordingly, the Court of Appeals affirmed that "[u]ntil the defamatory statement is communicated outside the corporate sphere or internal organization, it has not been published." *Id.* at 288–289.

It is true that a contrary rule with respect to communications between employees of a corporate defendant has been adopted by some courts. *See, e.g., Kennedy v. James Butler, Inc.,* 245 N.Y. 204, 156 N.E. 666 (1927). *But see Mims v. Metropolitan Life Insurance Company,* 200 F.2d 800, 802 (5th Cir.1952) (distinguishing *Kennedy v. James Butler, Inc., supra,* and holding that publication occurs under New York law only where the allegedly libelous material was communicated to an employee

whose duties were "unconnected with the process by which the [material] was produced"). However, the only cases offered by the plaintiff in support of this rule long antedate the revision of the common law of defamation that began with the decision of the Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

A rule that a communication between employees of a corporate defendant constitutes a "publication" could result in an unwarranted increase in the number of defamation suits filed in our courts. For example, a newspaper might become subject to a suit for defamation merely because its reporters disseminated among themselves arguably defamatory materials; the newspaper would be required to bear the initial costs of defending such a suit even if its employees' communications were ultimately found to have been privileged. In addition, the rule urged by the plaintiff might in some circumstances actually discourage the correction of inaccurate information; for example, communications among employees of a newspaper with respect to whether an allegedly defamatory news article ought to be corrected or retracted might constitute additional "publications" of the offending portions of the article. Indeed, the "publication" that the plaintiff relies upon in its attempt to bring this action within the limitations period apparently occurred when the defendant made the allegedly defamatory credit report available to an employee who was responsible for verifying the contents of the report with the plaintiff.

■ Accordingly, the court holds that the dissemination of an allegedly defamatory material among employees of a corporate defendant does not constitute a separate "publication" of that material under Connecticut law.

### B.

The plaintiff next asks the court to hold as a matter of first impression that the

---

**1.** It is undisputed that the communication of allegedly defamatory material to the plaintiff

itself does not constitute publication. *See* Restatement (Second) of Torts § 577 (1977).

two-year limitations period provided by C.G.S. § 52–597 begins to run only when the plaintiff discovered or reasonably should have discovered the allegedly defamatory publication. This suit would be timely if the court were to accept the plaintiff's position, because the parties agree, at least for purposes of the pending motions, that the plaintiff learned of the allegedly inaccurate credit report less than two years before this action was filed.[2]

The "discovery" rule urged by the plaintiff is inconsistent with the express language of C.G.S. § 52–597, which requires that actions for libel or slander be brought "within two years from the date of the act complained of." It cannot be disputed that "the act complained of" in this suit is the defendant's distribution of the allegedly defamatory credit report to other businesses and not the plaintiff's discovery of that report.

Moreover, C.G.S. § 52–597 is distinguishable by its terms from those statutes of limitations that require defamation suits to be brought within a given period after the plaintiff's cause of action "accrued." *See, e.g.,* Ill.Rev.Stat. ch. 83, § 14 ("[a]ctions for slander [and] libel … shall be commenced within one year next after the cause of action accrued"); Or.Rev.Stat. § 12.010 ("[a]ctions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued"); Wash.Rev.Code § 4.16.010 ("actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued"). It appears that courts have adopted a "discovery" rule for defamation actions only in those states with an "accrual" statute of limitations. *See, e.g., Tom Olesker's Exciting World of Fashion v. Dun & Bradstreet, Inc.,* 61

Ill.2d 129, 334 N.E.2d 160 (1975); *White v. Gurnsey,* 48 Or.App. 931, 618 P.2d 975 (1980); *Kittinger v. The Boeing Company,* 21 Wash.App. 484, 585 P.2d 812 (Wash.Ct. App.1978).

There is no precedent in Connecticut law for the interpretation of C.G.S. § 52–597 that is urged by the plaintiff. In addition, the statutory language and judicial interpretations of C.G.S. § 52–584,[3] which provides the limitations period for actions sounding in negligence, reckless or wanton misconduct and medical malpractice, further militate against the application of a "discovery" rule in the case at bar.

A plaintiff must satisfy a two-pronged test if his claim is to be deemed timely under C.G.S. § 52–584: First, he must commence his suit "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered." Second, he must also bring the action within "three years from the date of the act or omission complained of."

The first prong of C.G.S. § 52–584 demonstrates that the state legislature knew how to write a "discovery" rule when it wished to do so. Furthermore, the Supreme Court of Connecticut has recognized that the second prong of C.G.S. § 52–584, which is substantially similar in language to C.G.S. § 52–597, begins to run on the day of the tortious act or omission rather than on the day of its discovery and may "on occasion bar an action even before the cause of action accrues." *Vilcinskas v. Sears, Roebuck & Company,* 144 Conn. 170, 175, 127 A.2d 814 (1956).

In *McDonald v. Haynes Medical Laboratory,* 192 Conn. 327, 471 A.2d 646 (1984), Connecticut's Supreme Court held that the second prong of C.G.S. § 52–584 barred the

---

**2.** C.G.S. § 52–595 provides that, if the defendant has fraudulently concealed the existence of a cause of action from the plaintiff, the cause of action accrues only when the plaintiff "first discovers its existence." The plaintiff has not claimed that the actions of the defendant amounted to fraudulent concealment sufficient to trigger C.G.S. § 52–595.

**3.** C.G.S. § 52–584 provides, in pertinent part, that

[n]o action … shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, except that no such action may be brought more than three years from the date of the act or omission complained of.

plaintiff's medical malpractice claim against a doctor who had incorrectly diagnosed her RH blood factor even though the plaintiff had not discovered, and could not reasonably have discovered, the nature of her condition within three years of the negligent act of which she complained. The court, in refusing to except "instances where the injury is inherently undiscoverable" from the second prong of C.G.S. § 52–584 and the identically phrased statute of limitations for wrongful death actions, observed:

> The statutes in question are clear on their face and the language employed has previously been construed by this court.... It is not the function of this court to alter the will of the legislature merely because the results are unfair.... Instead, it is our duty to construe the language as used by the legislature.... Absent any indication that the General Assembly no longer intends the phrase "from the date of the act or omission complained of" to be construed in accordance with our decision in *Vilcinskas v. Sears, Roebuck & Co., supra,* we hold that the three year limitation of General Statutes §§ 52–555 and 52–584 begins to run from the date of the negligent act.

*Id.* at 334, 471 A.2d 646 (citations omitted).

A contrary result was not contemplated by our Court of Appeals in *Hamilton v. Smith,* 773 F.2d 461 (2d Cir.1985). The court in that decision recognized that the second prong of C.G.S. § 52–584 "causes the statutory clock to begin running when the negligent conduct of the defendant occurs" so that "an action may be time-barred even if plaintiff did not discover and in the exercise of reasonable care could not have discovered his injury during the three years following defendants [sic] act or omission." *Id.* at 466.

Accordingly, this court holds that to write a "discovery" rule into C.G.S. § 52–597 would be inconsistent with both the clear statutory requirement that the limitations period commence upon the occurrence of "the act complained of" and the refusal of the Connecticut Supreme Court to write a "discovery" rule into the similarly worded C.G.S. §§ 52–584 and 52–555. It is no more the function of this court than of the Connecticut Supreme Court "to alter the will of the legislature merely because the results are unfair" or may be considered to be unfair by the plaintiff.[4]

### C.

The plaintiff also contends that count one of the complaint cannot be dismissed because it states a claim for invasion of privacy as well as for defamation. An action for invasion of privacy would presumably be timely under either C.G.S. § 52–577, if the injury was alleged to have been intentionally inflicted, or C.G.S. § 52–584, if the injury was alleged to have resulted from negligent, reckless or wanton conduct.

However, the plaintiff has offered the court no persuasive reason to reject the considerable uncontroverted authority that "corporations do not enjoy a right to privacy." *Clinton Community Hospital Corporation v. Southern Maryland Medical Center,* 374 F.Supp. 450, 456 (D.Md.1974), *aff'd* 510 F.2d 1037 (4th Cir.), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975). *See also CNA Financial Corporation v. Local 743, International Brotherhood of Teamsters,* 515 F.Supp. 942, 946 (D.Ill.1981) ("[m]any courts that have considered the question have concluded that a corporation cannot maintain an action for invasion of the right of privacy and we believe this represents the better reasoned approach").

---

4. The possible "unfairness" that may result from a literal interpretation of the statute of limitations is considerably less compelling in the instant case than in *McDonald v. Haynes Medical Laboratory, supra.* The plaintiff in the earlier case did not discover, and could not reasonably have discovered, the "act complained of" during the applicable limitations period; the plaintiff in this case apparently learned of the "act complained of" only two months into the limitations period but nonetheless waited for nearly two years before filing suit.

The branch of the right to privacy invoked by the plaintiff is designed to protect "the interest of the *individual* in not being made to appear before the public in an objectionable false light." Restatement (Second) of Torts § 653E (1979) (emphasis added). The law of privacy is thus concerned with the reputational interests of individuals rather than the less substantial reputational interests of corporations.

The law of defamation would have provided an adequate remedy for the wrongs alleged in the plaintiff's complaint if this suit had been brought in a timely fashion.[5] The court declines to expand the right to privacy in the manner urged by the plaintiff merely to permit corporations to circumvent the shorter statute of limitations applicable to actions for defamation. *Cf. Morrison v. National Broadcasting Company, Inc.*, 19 N.Y.2d 453, 280 N.Y.S.2d 641, 643, 227 N.E.2d 572, 574 (1967) (Fuld, C.J.) (rejecting attempt to characterize action for injury to reputation as intentional tort rather than as defamation because "[a] contrary result might very well enable plaintiffs in libel and slander cases to circumvent the otherwise short limitations period by the simple expedient of 'redescribing [the] defamation action to fit this new noncategory'" of intentional wrong, *quoting* Kroner, *Torts*, 1966 Annual Survey of American Law 209, 215).

Accordingly, for the reasons stated above, the defendant's motion for summary judgment with respect to count one of the complaint is hereby granted.

## II.

The plaintiff seeks in count two of the complaint to hold the defendant liable under the Connecticut Product Liability Act, C.G.S. § 52–572m *et seq.* ("the Act"), for its publication of the allegedly inaccurate credit report. The defendant responds that the plaintiff has failed to state a claim for which relief can be granted because a credit report cannot constitute a "product" for purposes of the Act.

The court has not been referred to a single case—from Connecticut or any other jurisdiction—in which the law of product liability was applied to a credit report or any other verbal matter in the manner contemplated by the plaintiff.[6] The language of the Act evinces no legislative intent to extend its coverage to reports, periodicals, books or other writings. Indeed, the statutory definition of a "product liability claim" —which includes "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, installation, testing, warnings, instructions, marketing, packaging or labeling of any product"—appears to reflect a legislative concern with products of a more tangible nature.

A further indication that the legislature did not contemplate that publications would be characterized as "products" under the Act is the requirement of C.G.S. § 52–572n(a) that "[a] product liability claim ... shall be in lieu of all other claims against product sellers [including producers] ... for harm caused by a product." One of the effects of making the Act the exclusive remedy for "harm caused by" a publication would be to substitute the three-year limitation period applicable to product liability claims, *see* C.G.S. § 52–577a, for the two-year limitation period applicable to defamation claims, *see* C.G.S. § 52–597. It is unlikely that the legislature would have effectively repealed C.G.S. § 52–597, at least with respect to defamations contained in matter that is offered for sale or circulated to the public, without giving any notice to the writers, publishers, broadcasters

---

5. The court is aware that this suit was already untimely under C.G.S. § 52–597 at the time that the plaintiff retained its current counsel. However, the tardiness of counsel's arrival on the scene is not a sufficient cause for modifying the otherwise applicable statutes of limitations or other procedural rules.

6. Mere words may, of course, give rise to product liability claims under an "inadequate warning" theory. *See* C.G.S. § 52–572q. However, the actual injury in such cases is inflicted not by the words alone but by the underlying product whose dangers were not properly disclosed.

and sellers who would be affected by such an action. For this court to permit the plaintiff to take advantage of the three-year limitations period of C.G.S. § 52–577a, in the absence of any authorization in the statutory language or legislative history of the Act, would frustrate the legislative intent underlying C.G.S. § 52–597 by "enabl[ing] plaintiffs in libel and slander cases to circumvent the otherwise short limitations period by the simple expedient of 'redescribing [the] defamation action to fit this new noncategory,'" *Morrison v. National Broadcasting Company, Inc.,* supra, 280 N.Y.S.2d at 463, 227 N.E.2d at 574, of "dangerously defective publication."

■ Accordingly, the court declines to hold, in the absence of any supporting authority, that the Act can be applied to the credit reports issued by the defendant.

A contrary conclusion could, of course, raise serious constitutional concerns. The Act permits manufacturers and sellers to be held liable without fault for injuries caused by defective products. However, the Supreme Court has indicated that credit reports, while not meriting the level of protection accorded to debate on matters of public concern, are nonetheless a form of speech protected by the First and Fourteenth Amendments. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* — U.S. —, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985) (plurality opinion) ("*Greenmoss*"). The imposition of liability without fault on the publisher of a credit report pursuant to the Act would be just a short step from the imposition of liability without fault on an investigative reporter, a political columnist or a documentary film-

maker.[7] The constitutional constraints on the common law of defamation enunciated in *New York Times Company v. Sullivan,* supra, and its progeny, would effectively be nullified if writers, artists and publishers could be held strictly liable for their work under the product liability laws.[8]

### III.

■ The plaintiff contends in count three of its complaint that the defendant violated the Connecticut Unfair Trade Practices Act, C.G.S. § 42–110a *et seq.* ("CUTPA"), by requiring the subjects of credit reports to "pay money to defendant and periodically request reports on [their] credit standing" in order to monitor the practices of the defendant. Amended Complaint (filed Dec. 18, 1985) at 8. The defendant asserts that this claim must also fail because the plaintiff cannot establish the requisite nexus between the challenged activities and the public interest.

The Supreme Court of Connecticut held in *Ivey, Barnum & O'Mara v. Indian Harbor Properties, Inc.,* 190 Conn. 528, 461 A.2d 1369 (1983) (Peters, J.) ("*Ivey, Barnum & O'Mara*") that

[t]he special relief afforded by CUTPA requires, in a private dispute, the assertion of a public interest that is "specific and substantial." ... [A]llegedly deceptive acts or practices which arise out of a private controversy are actionable only if the acts or practices have a potential effect on the general consuming public.... The private action authorized by CUTPA ... is intended to provide additional sanctions to deter unfair trade practices that injure the general consuming public, rather than to provide addi-

---

7. *See Greenmoss, supra,* 105 S.Ct. at 2957 (Brennan, J., dissenting) (noting that the parties to that action did not question "the requirement of *Gertz* [*v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)] that respondent must show fault to obtain a judgment and actual damages").

8. *Halstead v. United States,* 535 F.Supp. 782 (D.Conn.1982), the principal case relied upon by the plaintiff in support of its product liability claim, is distinguishable from the case at bar. The navigational charts that Judge Eginton found in *Halstead* to be subject to the product liability laws, unlike the credit reports in the instant case, did not constitute speech protected by the First Amendment.

tional remedies for the redress of entirely private wrongs.

*Id.* at 540, 461 A.2d 1369 (citations omitted). *See also McLaughlin Ford, Inc. v. Ford Motor Company,* 192 Conn. 558, 473 A.2d 1185 (1984) (same).

The requirement that private plaintiffs demonstrate that actions challenged under CUTPA "have a potential effect on the general consuming public" was subsequently eliminated by Public Act 84–468. However, this court has previously held, as have many other courts that have considered the question, that this amendment does not apply retroactively to causes of action that arose prior to its effective date of June 8, 1984. *See Pine Associates, Inc. v. Aetna Casualty & Surety Company, et al.,* Civil No. H 85–1045 (JAC) (oral ruling) (D.Conn. Oct. 3, 1985); *Consolidated Marketing Corporation v. Carol Cable Company,* Civil No. H 82–262 (JAC) (D.Conn. Nov. 20, 1985); *Aldridge v. Cosby,* Civil No. H 83–949 (PCD) (D.Conn. Nov. 12, 1985) (Dorsey, J.); *Hydro Air of Connecticut v. Versa,* 599 F.Supp. 1119 (D.Conn. 1984) (Eginton, J.); *United States Machine Tools v. First Union Commercial Corporation,* 59 B.R. 470 (Bankr.D.Conn.1984) (Krechevsky, J.); *Fortini v. New England Log Homes,* 4 Conn.App. 132, 492 A.2d 545, *certification dismissed,* 197 Conn. 801, 495 A.2d 280 (1985). *But see Beeker v. New Haven Savings Bank,* Civil No. N 84–518 (EBB) (D.Conn. May 23, 1985) (Burns, J.); *Carpentino v. Transport Insurance Company,* 609 F.Supp. 556 (D.Conn.1985) (Zampano, J.); *Wilson v. Fireman's Fund Insurance Company,* 40 Conn.Supp. 336, 499 A.2d 81 (Jud.Dist. Hartford-New Britain 1985).

The plaintiff has offered no new evidence of a "clear[ ] and unequivocal[ ]" legislative intent to apply the amendment retroactively that would be sufficient to overcome the presumption that amendments affecting substantive rights are to be given only prospective effect. *See Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Company,* 193 Conn. 208, 232–233, 477 A.2d 988 (1984). Accordingly, the court

must determine on this motion for summary judgment whether, viewing all disputed issues of fact in the light most favorable to the plaintiff, the challenged actions of the defendant may have affected the "general consuming public."

This inquiry is guided by the Supreme Court's holding in *Greenmoss, supra,* 105 S.Ct. at 2947, that a credit report "concerns no public issue" but instead is "speech solely in the individual interest of the speaker and its specific business audience." The Court observed that "it cannot be said that the [credit] report involves any 'strong interest in the free flow of commercial information,' " *id., quoting Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 765, 96 S.Ct. 1817, 1827, 48 L.Ed.2d 346 (1976), because the report had been distributed only to five subscribers who were prohibited by Dun & Bradstreet from distributing it any further.

It is clear in light of the quoted language from *Greenmoss* that the defendant's confidential distribution of an arguably inaccurate credit report to nine of its subscribers is insufficient in itself to establish the nexus with the public interest required by *Ivey, Barnum & O'Mara.* The publication of such a report affects only "the individual interest of the speaker and its specific business audience" and not the broader interests of "the general consuming public."

The plaintiff seeks to avoid the effect of *Greenmoss* by arguing that the public interest was affected not merely by the credit reports themselves but also by the defendant's refusal to provide the plaintiff with all updated credit reports without the plaintiff having to request them. However, the plaintiff apparently does not dispute that the defendant "had a practice [during the period at issue] whereby any subject of a credit report who asked, either orally or in writing, for a copy of the report was given one free of charge." Supplemental Affidavit of James M. Lenegan (filed February 10, 1986) at ¶ 4. It also

appears to be undisputed that the defendant has since adopted the practice of automatically providing subjects with free copies of their credit reports whenever those reports are revised. *See* Affidavit of Timothy S. Offerle (filed February 10, 1986) at ¶ 7.

The plaintiff has failed to demonstrate how "the general consuming public" might have been affected by the procedure chosen by the defendant to provide subjects with copies of their credit reports. The issue of whether the plaintiff could automatically have received free copies of its updated credit reports, or whether it had to request each such report "orally or in writing" from the defendant, is of no apparent consequence to anyone other than the parties to this lawsuit. Indeed, the challenged practice presumably will have no further consequence even for these litigants now that the defendant will automatically provide the plaintiff with free copies of its updated credit reports.

Finally, the plaintiff asserts that "[w]here the legislative and executive branches of the United States government have been aware of a problem ... but have failed to respond, the judiciary should be liberal in defining the parameters of state laws such as CUTPA." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Amended Complaint and Motion for Summary Judgment (filed Dec. 19, 1985) at 22. Such arguments misperceive the proper role of the federal judiciary in American society. It is not the function of our courts, except in the defense of constitutional rights, *see, e.g., Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or in the elaboration of federal common law, *see, e.g., Clearfield Trust Company v. United States,* 318 U.S. 363, 744, 63 S.Ct. 573, 87 L.Ed. 838 (1943), to advance into territories where the elective branches of government have declined to tread.

Accordingly, because the plaintiff has failed to demonstrate any nexus between the defendant's challenged activities and the public interest as required by applicable Connecticut law, the court must grant the defendant's motion for summary judgment as to count three of the complaint.

### Conclusion

For the reasons stated above, the defendant's motions to dismiss and for summary judgment are granted in their entirety. Judgment for the defendant shall enter forthwith.

It is so ordered.